IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| MATT S. GRAY, | Cause No. CV-24-57-GF-BMM |
| Plaintiff, | |
| vs. | ORDER |
| FRANK J. BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

# INTRODUCTION

Matt S. Gray ("Gray") brings this action under 42 U.S.C. § 405(g), seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner"). (Doc. 13.) Gray asks the Court to grant him social security disability insurance benefits, or alternatively, to remand this action for further hearing. (*Id.* at 2.) The Commissioner opposes Gray's motion. (Doc. 18.)

1

## JURISDICTION

The Court retains jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Gray resides in Great Falls, Cascade County, Montana. 28 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3). (Doc. 9 at 33.)

## PROCEDURAL BACKGROUND

Gray filed an application for Title II disability insurance benefits on October 1, 2020. (Doc. 9 at 36.) Gray's claims were denied upon initial review and on reconsideration. (*Id.*) Gray requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) The ALJ issued an unfavorable decision on July 28, 2023. (*Id.* at 41–56.) The Appeals Council denied Gray's request to review that decision. (*Id.* at 10–13.) This denial rendered the ALJ's decision the final decision of the Commissioner. *Luther v. Berryhill*, 891 F.3d 872, 876 (9th Cir. 2018).

## STANDARD OF REVIEW

The Court reviews the Commissioner's final decision under the substantial evidence standard. *See* 42 U.S.C. § 405(g). The decision will be disturbed only if it is not supported by substantial evidence or is based on legal error. *See id.*; *see also Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 678 (9th Cir. 2005) (internal citations

omitted). "Substantial evidence means more than a scintilla, but less than a preponderance." *Smolen*, 80 F.3d at 1279 (internal quotations omitted).

A court must "consider the record as a whole, weighing both the evidence that supports and detracts from the [Commissioner's] conclusion." *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). A court may reject the findings not supported by substantial evidence in the record, but it may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999).

## DISABILITY CRITERIA

A claimant is disabled for purposes of the Social Security Act if (1) the claimant "suffers from a 'medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months'" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is unable to perform their previous work and also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (quoting 42 U.S.C. § 1382c(a)(3)(A), (B)).

Social Security Administration regulations provide a five-step sequential process to determine disability. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. § 416.920. The five steps are as follows:

3

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), (e) 416.920(d), (e).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof in the first four steps. *Id.* at 953. The Commissioner bears the burden at step five. *Id.* at 953–54.

## FACTUAL BACKGROUND

### I. ALJ Determination

The ALJ followed the 5-step sequential evaluation process in evaluating Gray's claim. (Doc. 9 at 40.) The ALJ determined at the first step that Gray met the insured status requirements through December 31, 2025. (Doc. 9 at 40.) The ALJ

4

further determined that Gray had not engaged in substantial gainful activity since his alleged onset date of July 2, 2020. (*Id.*)

The ALJ determined at step two that Gray suffered from the following severe impairments: lumbar degenerative disc disease, obesity, anxiety, depression, and post-traumatic stress disorder. (*Id.*) The ALJ found that these severe impairments significantly limited Gray's ability to perform basic work activities. (*Id.*) The ALJ noted that in addition to the above listed severe impairments, Gray suffers from sleep apnea, restless leg syndrome, thyroid disease, hypogonadism, diabetes, hepatic steatosis and peri nephrotic mild inflammation. (*Id.*) The ALJ found, however, that these additional impairments had no more than a minimal impact on Gray's basic work-related activities. (*Id.*)

At step three, the ALJ found that Gray lacked an impairment or combination of impairments that met or medically equaled the severity described in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1, the Social Security regulations. (*Id.* at 41–45.)

At step four, the ALJ determined that Gray possessed the following residual functional capacity:

> "[Gray] can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can stand and walk about six hours in an eight-hour workday with normal work breaks. He can sit about six hours in an eight-hour workday with normal work breaks. He must be able to change portions between sitting,

standing, and walking every 30–60 minutes for a few minutes at time, while staying on task . . . The claimant can frequently climb ramps and stairs. He can occasionally climb ladders, ropes, or scaffolds. He can frequently kneel, crouch, and crawl. He can occasionally stoop. The claimant must avoid concentrated exposure to extreme cold, vibrations, and workplace hazards. The claimant can understand, remember, and carry out simple tasks. He can maintain attention, concentration, persistence, and pace for such tasks for eight-hour workdays and 40-hour workweeks. He is precluded from work requiring fast or fixed production rate or pace but can perform goal-oriented work. He can tolerate occasional interactions with supervisors, coworkers, and members of the public. He is unable to work directly with members of the public as part of his job duties. He can tolerate usual work situations as well as tolerate occasional changes in the routine work setting."

(*Id.* at 45–46.) Based on this residual functional capacity, the ALJ found that Gray could not perform any past relevant work as a crane operator. (*Id.* at 54.)

At step five, the ALJ found, however, that Gray remained capable of making a successful adjustment to other work that existed in significant numbers in the national economy considering his age, education, work experience, and residual functional capacity. (*Id.* at 55). The ALJ relied on the expertise and experience of the vocational expert to determine that Gray could perform the jobs of Office Helper, Bench Assembler, and Routing Clerk. (*Id.* at 54–55) The ALJ acknowledged an inconsistency between the *Dictionary of Occupational Titles* and the vocational expert's testimony regarding the limitations listed in the residual functional capacity. (*Id.* at 55.) The ALJ found that the vocational expert's explanation of the discrepancy

to be reasonable given the vocational expert's experience and expertise. (*Id.* at 54–55) Accordingly, the ALJ concluded that Gray was "not disabled" under the relevant sections of the Social Security Act. (*Id.* at 56.)

## II.   Gray's Position

Gray argues that the ALJ erred by failing to resolve a discrepancy between the residual functional capacity and the vocational expert's testimony. (Doc. 13 at 7.)

## III.   Commissioner's Position

The Commissioner asserts that the ALJ properly resolved any discrepancies between Gray's work abilities and the vocational expert's testimony. (Doc. 18.)

## DISCUSSION

## I.   Whether the ALJ failed to properly resolve any conflicts between the Vocational Expert's testimony and Gray's residual functional capacity.

Gray contends that substantial evidence in the record fails to support the ALJ's finding that the vocational expert presented a reasonable explanation for the discrepancy between her opinion and the *Dictionary of Occupational Titles*. (Doc. 13 at 8.) Gray argues that the ALJ specifically failed to assess how the limitations set forth in the residual functional capacity evaluation conflicted with the jobs recommended by the vocational expert. (Doc. 13 at 9–11.) The Court disagrees.

Before an ALJ can rely on the testimony of a vocational expert, the ALJ must

7

initially inquire as to whether there exists a conflict between the expert's testimony and the *Dictionary of Occupational Titles*. *See Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). "Although evidence provided by a vocational expert generally should be consistent with the *Dictionary of Occupational Titles*, neither the *Dictionary of Occupational Titles* nor the vocational expert evidence automatically trumps when there is a conflict." *Id.* If the ALJ determines a conflict exists, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles*." *Id.* A vocational expert's explanation proves reasonable when they provide sufficient support for their conclusions. *Id.* at 1153–54.

The ALJ applied these standards correctly and based her decision on substantial evidence in the record. The ALJ inquired to whether the vocational expert's testimony proved consistent with the *Dictionary of Occupational Titles* and questioned the basis of the vocational expert's opinion. (Doc. 9 at 87.) The ALJ specifically asked the vocational expert how the *Dictionary of Occupational Titles* aligned with the vocational expert's opinion related to the limitations of "being off task, absenteeism, normal breaks, climbing various things, changing positions, working with people, dealing with changes, production rate or pace, and erosion of numbers." (*Id.*) The vocational expert answered that the *Dictionary of Occupational*

*Titl*es fails to "address the elements" mentioned by the ALJ. The ALJ determined that an inconsistency existed. (*Id.*) The vocational expert further testified that her "20 plus years of experience observing jobs, placing individuals in jobs, consultation with other vocational experts, consultation with employers in review of human resources in government publications" formed the basis of her opinion. (*Id.*)

In evaluating the vocational expert's testimony, the ALJ properly considered the limitations set forth in the residual functional capacity. The ALJ offered three hypotheticals to the vocational expert regarding the limitations set for in the residual functional capacity. (*Id.* at 82–87.) The vocational expert provided the ALJ with job numbers considering the specific limitations of the residual functional capacity. (*Id.* at 85). The ALJ reasonably determined that the vocational expert provided sufficient support for her conclusions based on her expertise and experience. (*Id.* at 55–56.)

## CONCLUSION

The record shows the ALJ appropriately reconciled discrepancies between the residual functional capacity and the vocational expert's testimony. Accordingly, the ALJ's decision is free of legal error, supported by substantial evidence, and must be affirmed.

## ORDER

Accordingly, **IT IS ORDERED:**

1. The Commissioner's final decision denying Gray's claim for Title II disability benefits and Title XVI supplemental security income benefits is **AFFIRMED.**

2. This case is **DISMISSED** with prejudice.

3. The Clerk of Court is directed to enter judgment accordingly.

   **DATED** this 17th day of September, 2025.

   _____
   Brian Morris, Chief District Judge
   United States District Court